James C. Fitzpatrick
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

Attorneys for Petitioner
Broadcast Music, Inc.

08 CV 00216
RECEIVED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADCAST MUSIC, INC., Petitioner, | Related to *United States v. Broadcast Music, Inc.*, 64 Civ. 3787 (LLS) |
| -against- | 08 Civ. ________ (LLS) |
| DMX INC., Respondent. | **PETITION FOR DETERMINATION OF REASONABLE LICENSE FEES** |

Petitioner Broadcast Music, Inc. ("BMI"), by its attorneys, Hughes Hubbard & Reed LLP, for its petition states as follows:

1. BMI seeks an order from the Court, pursuant to Article XIV(B) of the BMI Consent Decree, setting reasonable fees and terms for licenses authorizing performances of music in the BMI repertoire by DMX Inc. ("DMX") in its music service to commercial establishments ("commercial service") in the United States, its commonwealths, territories and possessions, effective as of June 3, 2005 and continuing through June 30, 2009.

2. Pursuant to the Order of Judge Stanton dated April 25, 2001 in *United States v. Broadcast Music, Inc.*, 64 Civ. 3787 (a copy of which is attached hereto as Exhibit 1), BMI

brings this proceeding by separate petition and notes that this proceeding is related to 64 Civ. 3787.

**The Parties**

3. BMI is a music performing right licensing organization, with its headquarters at 320 West 57th Street, New York, New York 10019. BMI is a New York corporation that operates on a non-profit-making basis, licensing the public performing right in approximately 6.5 million musical works on behalf of over 350,000 composers, songwriters and music publishers to a wide variety of music users.

4. Upon information and belief, DMX is a corporation, with its principal place of business at 600 Congress Avenue, Suite 1400, Austin Texas 78701. For many years, DMX and its corporate predecessor have been engaged in the business of programming and licensing original music programs for use by customers operating commercial establishments throughout the United States. Upon information and belief, THP Capstar Acquisition Corp, an affiliate of Capstar Partners, LLC ("Capstar"), a private investment company, acquired the business of DMX effective as of June 3, 2005 in a bankruptcy proceeding.

**DMX's Commercial Music Service**

5. Today, DMX is in the business of distributing audio-only and audiovisual[1] music programming to commercial establishments such as retail stores, restaurants, hotels, offices and airlines. DMX programs and transmits multiple commercial-free music channels that make use

---

1 DMX has not applied to BMI for a license for the public performance of musical works in its audiovisual programming, and so those performances are not licensed by BMI. To the extent that DMX should apply separately for such a BMI license that would be a different category of BMI license with different rates and terms.

of many genres of music

6. DMX's music service programming is transmitted to its customers by satellite or made available on site through distribution to its customers of physical media such as compact disks (CDs) playable through proprietary equipment.

7. DMX's customers pay a monthly subscription fee to receive the service. Upon information and belief, DMX currently provides its service to tens of thousands of customer locations throughout the United States.

**Article XIV(A) Application of DMX**

8. By letter dated June 3, 2005, DMX applied for a through-to-the-listener license to perform publicly all of the compositions in BMI's repertoire by means of its commercial service.

9. By letter dated September 1, 2005, BMI formally responded to DMX's license fee request, offering proposed rates and terms for a license, among other things.

10. In response to a further demand by DMX for a license fee quote for a license that took into account that some BMI-repertoire music might be directly licensed by DMX (a "carve-out" blanket license), on October 4, 2007, BMI made a carve-out license fee quote to DMX.

11. Although the parties have been negotiating since June 2005 to try and reach agreement on final fees and terms, to date, BMI has been unable to reach agreement with DMX on a definitive license agreement.

12. DMX has been operating under an interim license agreement with BMI dated November 4, 2005. The final fees to be established by this Court will be retroactive to the date of application, June 3, 2005, with credit for any fees provided and paid under that interim agreement.

13. DMX has made no filing before this Court seeking determination pursuant to the BMI Consent Decree of a reasonable license fee.

**Jurisdiction**

14. Jurisdiction is proper in this Court pursuant to the Court's rate-setting authority under Article XIV of the BMI Consent Decree. *United States v. Broadcast Music, Inc.*, 1966 Trade Cas. (CCH) ¶ 71,941 (S.D.N.Y. 1966), *as amended by* 1996-1 Trade Cas. (CCH) ¶ 71,378 (S.D.N.Y. 1994) (the "BMI Consent Decree"). (A copy of the BMI Consent Decree is attached hereto as Exhibit 2.)

15. Pursuant to Article XIV of the BMI Consent Decree, the Court has jurisdiction over the instant Petition because: (i) DMX has made written application for a reasonable fee pursuant to Article XIV of the BMI Consent Decree; (ii) BMI has advised DMX of the fee it deemed reasonable for the licenses requested; and (iii) more than 90 days have passed since BMI advised DMX of the fee it deemed reasonable, and DMX has not made a filing in this Court seeking determination of a reasonable fee. Accordingly, BMI may, pursuant to Article XIV of the BMI Consent Decree, seek this Court's determination of a reasonable interim and final license fee with respect to DMX's Commercial music service.

16. Venue is proper in this district as a result of the express consent of DMX in applying for a license pursuant to Article XIV of the BMI Consent Decree.

**Relief Requested**

25. WHEREFORE, BMI respectfully requests that the Court enter an Order:

(a) directing DMX to pay license fees at the rates and on the terms requested by BMI for a license covering performances of BMI-repertoire music by DMX to customers at

commercial establishments in the United States, its commonwealths, territories and possessions, effective as of June 3, 2005 and continuing through and including June 30, 2009.

(b) for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
January 10, 2008

HUGHES HUBBARD & REED LLP

By [signature]
James C. Fitzpatrick
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

– and –

Marvin L. Berenson
Joseph J. DiMona
Stuart Rosen
320 West 57th Street
New York, New York 10019
(212) 830-2533

Attorneys for Petitioner Broadcast Music, Inc.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA, :

Plaintiff, :

- against - :

BROADCAST MUSIC, INC., :

Defendant. :

- - - - - - - - - - - - - - - - - - - - -X

**ORDER**

64 Civ. 3787 (LLS)

Since entry of the Consent Decree in this case, 1966 Trade Cases (CCH) ¶ 71,941 (S.D.N.Y. 1966), as amended by 1996-1 Trade Cases ¶ 71,378 (S.D.N.Y. 1994), there have been and will continue to be a series of applications for construction of the decree, for the setting of reasonable rates, and similar or related forms of relief under the decree. Each of these applications presents claims by different parties against Broadcast Music, Inc. Each may involve motions, stipulations, affidavits, and hearings or trials. If allowed to continue, the filings made in these separate matters will all aggregate indiscriminately in the single file maintained with respect to this case; and for lack of separate docket sheets and the maintenance of separate files, it will be burdensome to retrieve or reconstruct the filings made in these separate applications.

Accordingly, to provide for the necessary separate file identity, storage and docket sheet for each such application made

with respect to the decree in this case, the following steps will be followed:

(1) Each such proceeding shall be commenced by a separate petition under a separate caption and index number, and in addition shall display the designation "Related to United States v. Broadcast Music, Inc., 64 Civ. 3787";

(2) A separate file and docket sheet, which shall state that it is "Related to United States v. Broadcast Music, Inc., 64 Civ. 3787", shall be maintained for each such proceeding; and

(3) A contemporaneous notation shall be made in the docket of United States v. Broadcast Music, Inc., 64 Civ. 3787, that such a proceeding has been commenced, setting forth for each its caption and its docket number.

So ordered.

Dated: New York, New York
April 25, 2001

Louis L. Stanton
LOUIS L. STANTON
U. S. D. J.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

BROADCAST MUSIC, INC. and RKO GENERAL, INC.,

Defendants.

Civil No. 64-Civ-3787

## FINAL JUDGMENT

Plaintiff, United States of America, having filed its complaint herein on December 10, 1964, and defendant having filed its answer denying the substantive allegations of such complaint, and the parties by their respective attorneys having consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law herein and without this Final Judgment constituting evidence or an admission by either party with respect to any such issue:

Now, THEREFORE, before the taking of any testimony and without trial or adjudication of any issue of fact or law herein, and upon the consent of the parties hereto, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

I.

This Court has jurisdiction of the subject matter of this action and of the parties hereto. The complaint states claims for relief against the defendant under Sections 1 and 2 of the Act of Congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," commonly known as the Sherman Act, as amended.

II.

As used in this Final Judgment:

(A) "Defendant" means the defendant Broadcast Music, Inc., a New York Corporation;

(B) "Programming period" means a fifteen minute period of broadcasting commencing on the hour and at fifteen, thirty and

forty-five minutes past the hour without regard to whether such period contains one or more programs or announcements.

(C) "Defendant's repertory" means those compositions, the right of public performance of which defendant has or hereafter shall have the right to license or sublicense.

III.

The provisions of this Final Judgment shall apply to defendant and to each of its subsidiaries, successors, assigns, officers, directors, servants, employees and agents, and to all persons in active concert or participation with defendant who receive actual notice of this Final Judgment by personal service or otherwise. None of the provisions of this Final Judgment shall apply outside the United States of America, its territories, and possessions.

IV.

Defendant is enjoined and restrained from:

(A) Failing to grant permission, on the written request of all writers and publishers of a musical composition including the copyright proprietor thereof, allowing such persons to issue to a music user making direct performances to the public a non-exclusive license permitting the making of specified performances of such musical composition by such music user directly to the public, provided that the defendant shall not be required to make payment with respect to performances so licensed.

(B) Engaging in the commercial publication or recording of music or in the commercial distribution of sheet music or recordings.

V.

(A) Defendant shall not refuse to enter into a contract providing for the licensing by defendant of performance rights with any writer who shall have had at least one copyrighted musical composition of his writing commercially published or recorded, or with any publisher of music actively engaged in the music publishing business whose musical publications have been commercially published or recorded and publicly promoted and distributed for at least one year, and who assumes the financial risk involved in the normal publication of musical works; provided, however, that defendant shall have the right to refuse to enter into any such contract with any writer or publisher who does not satisfy reasonable standards of literacy and integrity if the defendant is willing to submit to arbitration in the County, City

and State of New York the reasonableness and applicability of such standards, under the rules then prevailing of the American Arbitration Association, with any writer or publisher with whom defendant has refused so to contract.

(B) Defendant shall not enter into any contract with a writer or publisher requiring such writer or publisher to grant to defendant performing rights for a period in excess of five years, provided, however, that defendant may continue to license, as if under the contract, all musical compositions in which the defendant has performing rights at the date of termination of any such contract until all advances made by defendant to such writers and publishers shall have been earned or repaid.

(C) Upon the termination, at any time hereafter, of any contract with a writer or publisher relating to the licensing of the right publicly to perform any musical composition, defendant shall continue to pay for performances of the musical compositions of such writer or publisher licensed by defendant upon the basis of the current performance rates generally paid by defendant to writers and publishers for similar performances of similar compositions for so long as such performing rights are not otherwise licensed.

VI.

(A) Defendant shall not acquire rights of public performance in any musical compositions from any publisher under a contract which requires the officers, directors, owners or employees of such publisher to refrain from publishing or promoting musical works licensed through another performing rights organization, provided that nothing contained in this paragraph shall prevent defendant from entering into a contract with a publishing entity which requires such entity not to license any performance rights through any other performing rights organization during the term of the contract, and requiring that any works licensed by such officers, directors, owners or employees through another performing rights organization be licensed by a separate publishing entity which does not have a name identical with or similar to the name of any publishing entity with which defendant has contracted.

(B) Defendant shall not enter into any agreement for the acquisition or the licensing of performing rights which requires the recording or public performance of any stated amount or percentage of music, the performing rights in which are licensed or are to be licensed by defendant.

VII.

(A) Defendant shall make available at reasonable intervals, to all writers and publishers who have granted performance rights to it, a complete statement of the performance payment rates (to writers, those applicable to writers, and to publishers, those applicable to publishers), currently utilized by it for all classifications of performances and musical compositions.

(B) Defendant will not offer or agree to make payments in advance for a stated period for future performing rights which are not either repayable or to be earned by means of future performance to any writer or publisher who, at the time of such offer or agreement, is a member of or under direct contract for the licensing of such performing rights with any other United States performing rights licensing organization, provided that this restriction shall not apply (1) in the case of any such writer or publisher who at any time prior to said offer or agreement had licensed performing rights through defendant or (2) in the case of any such writer or publisher who is a member of or directly affiliated with any other United States performing rights licensing organization which makes offers or makes payments similar to those forbidden in this subparagraph to writers or publishers then under contract to defendant.

(C) Defendant shall include in all contracts which it tenders to writers, publishers and music users relating to the licensing of performance rights a clause requiring the parties to submit to arbitration in the City, County and State of New York under the then prevailing rules of the American Arbitration Association, all disputes of any kind, nature or description in connection with the terms and conditions of such contracts or arising out of the performance thereof or based upon an alleged breach thereof, except that in all contracts tendered by defendant to music users, the clause requiring the parties to submit to arbitration will exclude disputes that are cognizable by the Court pursuant to Article XIV hereof.

VIII.

(A) Defendant shall not enter into, recognize as valid or perform any performing rights license agreement which shall result in discriminating in rates or terms between licensees similarly situated; provided, however, that differentials based upon applicable business factors which justify different rates or terms shall not be considered discrimination within the meaning of this section; and provided further that nothing contained in this section shall prevent changes in rates or terms from time to time by reason of changing conditions affecting the market for or marketability of performing rights.

(B) Defendant shall, upon the request of any unlicensed broadcaster, license the rights publicly to perform its repertory by broadcasting on either a per program or per programming period basis, at defendant's option. The fee for this license shall relate only to programs (including announcements), or to programming periods, during which a licensed composition is performed. The fee shall be expressed, at defendant's option, either (1) in dollars, (2) as a percentage of the revenue which the broadcaster received for the use of its broadcasting facilities or (3) in the case of sustaining programs or programming periods, as a percentage of the applicable card rate had the program or programming period been commercially sponsored. In the event defendant offers to license broadcasters on bases in addition to a per program or per programming period basis, defendant shall act in good faith so that there shall be a relationship between such per program or such per programming period basis and such other bases, justifiable by applicable business factors including availability, so that there will be no frustration of the purpose of this section to afford broadcasters alternative bases of license compensation.

IX.

(A) Defendant shall not license the public performance of any musical composition or compositions except on a basis whereby, insofar as network broadcasting by a regularly constituted network so requesting is concerned, the issuance of a single license, authorizing and fixing a single license fee for such performance by network broadcasting, shall permit the simultaneous broadcasting of such performance by all stations on the network which shall broadcast such performance, without requiring separate licenses for such several stations for such performance.

(B) With respect to any musical composition in defendant's catalogue of musical compositions licensed for broadcasting which is or shall be lawfully recorded for performance on specified commercially sponsored programs on an electrical transcription or on other specially prepared recordation intended for broadcasting purposes, defendant shall not refuse to offer to license the public performance by designated broadcasting stations of such compositions by a single license to any manufacturer, producer or distributor of such transcription or recordation or to any advertiser or advertising agency on whose behalf such transcription or recordation shall have been made who may request such license, which single license shall authorize the broadcasting of the recorded composition by means of such transcription or recordation by all stations enumerated by the licensee, on terms and conditions fixed by defendant, without requiring separate licenses for such enumerated stations.

(C) Defendant shall not, in connection with any offer to license by it the public performance of musical compositions by

music users other than broadcasters, refuse to offer a license at a price or prices to be fixed by defendant with the consent of the copyright proprietor for the performance of such specific (i.e., per piece) musical compositions, the use of which shall be requested by the prospective licensee.

X.

(A) Defendant shall not assert or exercise any right or power to restrict from public performance by any licensee of defendant any copyrighted musical composition in order to exact additional consideration for the performance thereof, or for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition; provided, however, that nothing in this paragraph shall prevent defendant from restricting performances of a musical composition in order reasonably to protect the work against indiscriminate performances or the value of the public performance rights therein or to protect the dramatic performing rights therein, or, as may be reasonably necessary in connection with any claim or litigation involving the performance rights in any such composition.

(B) Defendant, during the term of any license agreements with any class of licensees, shall not make any voluntary reductions in the fees payable under any such agreements, provided, however, that nothing herein shall prevent defendant from lowering any fees or rates to any or all classes of licensees in response to changing conditions affecting the value or marketability of its catalogue to such class or classes, or where necessary to meet competition.

XI.

For the purpose of securing or determining compliance with this Final Judgment, and for no other purpose, duly authorized representatives of the Department of Justice shall, on written request of the Attorney General or the Assistant Attorney General in charge of the Antitrust Division. and on reasonable notice to defendant made to its principal office, be permitted, subject to any legally recognized privilege:

(A) Access, during office hours of such defendant, to all books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or under the control of defendant relating to any matters contained in this Final Judgment;

(B) Subject to the reasonable convenience of defendant and without restraint or interference from it, to interview officers or employees of defendant, who may have counsel present regarding any such matters.

Upon written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, defendant shall submit such reports in writing with respect to the matters contained in this Final Judgment as may from time to time be necessary to the enforcement of this Final Judgment.

No information obtained by the means permitted in this Section XI shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch of the Plaintiff, except in the course of legal proceedings in which the United States is a party for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

XII.

All of the provisions of this Final Judgment shall become effective on the entry thereof, except as to paragraph C of Article VII, which shall not become effective until 90 days after the date of entry of this Final Judgment.

XIII.

Jurisdiction is retained by this Court for the purpose of enabling either of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of the provisions thereof, for the enforcement of compliance therewith and for the punishment of violations thereof.

To best preserve the independent conduct of defendant's music licensing activities, the jurisdiction retained by this Court over this Final Judgment shall be exercised by a Judge of this Court other than one to whom has been assigned any action in which a judgment has been entered retaining jurisdiction over any music performing rights licensing organization (e.g. ASCAP) other than defendant. No reference or assignment of any issue or matter under this Final Judgment shall be made to a Magistrate Judge or Master to whom has been referred or assigned any pending issue or matter in which any music performing rights licensing organization other than defendant as to which this Court has entered judgment retaining jurisdiction, (e.g. ASCAP) is a party.

XIV.

(A) Subject to all provisions of this Final Judgment, defendant shall, within ninety (90) days of its receipt of a written application from an applicant for a license for the right

of public performance of any, some or all of the compositions in defendant's repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days from the date when defendant advises the applicant of the fee which it deems reasonable, the applicant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall, upon receipt of notice of the filing of such application, promptly give notice thereof to the Assistant Attorney General in charge of the Antitrust Division. If the parties are unable to agree upon a reasonable fee within ninety (90) days from the date when defendant advises the applicant of the fee which it deems reasonable and no such filing by applicant for the determination of a reasonable fee for the license requested is pending, then defendant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall promptly give notice of its filing of such application to the Assistant Attorney General in charge of the Antitrust Division. In any such proceeding, defendant shall have the burden of proof to establish the reasonableness of the fee requested by it. Should defendant not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence. Pending the completion of any such negotiations or proceedings, the applicant shall have the right to use any, some or all of the compositions in defendant's repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Subsection (B) hereof, and to the final order or judgment entered by this Court in such proceeding;

(B) When an applicant has the right to perform any compositions in defendant's repertory pending the completion of any negotiations or proceedings provided for in Subsection (A) hereof, either the applicant or defendant may apply to this Court to fix an interim fee pending final determination of what constitutes a reasonable fee. It is the purpose of this provision that an interim fee be determined promptly, and without prejudice as to the final determination of what constitutes a reasonable fee. It is further intended that interim fee proceedings be completed within 120 days of the date when application is made to fix an interim fee, subject to extension at the request of defendant or the applicant only in the interest of justice for good cause shown. If the Court fixes such interim fee, defendant shall then issue and the applicant shall accept a license providing for the payment of a fee at such interim rate from the date the applicant requested a license. If the applicant fails to accept such license or fails to pay the interim fee in accordance therewith, such failure shall be ground for the dismissal of its application. Where an interim license has been issued pursuant to this Subsection (B), the reasonable fee finally determined by this Court shall be retroactive to the date the applicant requested a license;

(C) When a reasonable fee has been finally determined by this Court, defendant shall be required to offer a license at a comparable fee to all other applicants similarly situated who shall thereafter request a license of defendant, but any license agreement which has been executed without any Court determination between defendant and another applicant similarly situated prior to such determination by the Court shall not be deemed to be in any way affected or altered by such determination for the term of such license agreement;

(D) Nothing in this Article XIV shall prevent any applicant from attacking in the aforesaid proceedings or in any other controversy the validity of the copyright of any of the compositions in defendant's repertory nor shall this Judgment be construed as importing any validity or value to any of said copyrights.

AND IT IS FURTHER ORDERED, ADJUDGED and DECREED that with respect to any music user heretofore licensed by defendant the license agreement of which expressly provides for determination by this Court of reasonable license fees or other terms for any period covered by such license, either defendant or such music user may apply to this Court for such determination provided that such license agreement provision has not otherwise expired.

Dated: New York, N. Y.
December 29, 1966

EDWARD C. MCLEAN
United States District Judge

JUDGMENT ENTERED DECEMBER 29, 1966

JOHN J. OLEAR, JR.
*Clerk*

Dated: New York, New York
November 18, 1994

Robert P. Patterson, Jr.
U.S.D.J.