UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

| | |
|---|---|
| Broadcast Music, Inc., | : |
| | : |
| Petitioner, | : 08 Civ. 216 (LLS) |
| | : |
| -against- | : *Related to United States v.* |
| | : *Broadcast Music, Inc.,* 64 Civ. |
| DMX, Inc., | : 3787 (LLS) |
| | : |
| Respondent. | : |
| | : |

------------------------------------------------------------------- X

**MEMORANDUM OF THE UNITED STATES ON DECREE CONSTRUCTION ISSUES**

  Pursuant to Article XIII of the BMI Consent Decree, 1966 Trade Cas. (CCH) ¶ 71,941, the United States takes the unusual step of commenting on an active rate case between Broadcast Music, Inc. ("BMI") and a BMI licensee, in this case, DMX, Inc. We do so to address a single question disputed by the parties: whether it would be consistent with the BMI Consent Decree to increase by 15 percent or more the headline fee of the blanket carve-out license. BMI seeks to charge an "option value premium" in consideration for giving DMX additional flexibility over the traditional flat fee blanket license. The United States believes that this proposed increased fee undermines the BMI Consent Decree. BMI's approach would deter users from engaging in direct licensing with rights holders – a critical component of the structures created under the decree.

  Almost a decade ago, the Second Circuit held that the BMI Consent Decree obligates BMI to offer background music providers such as DMX the kind of blanket carve-out license at issue in this rate case. *United States v. Broadcast Music, Inc.*, 275 F.3d 168 (2d Cir. 2001) ("*AEI*"). To date, though, despite multiple requests for such a license, BMI has yet to issue a

single one.  This rate case is the first to explore how rates for such a license should be set.  The blanket carve-out license fee structure adopted in this litigation inevitably will influence the expectations of all BMI licensees, and thus the vigor with which they pursue direct licenses.  Adding the significant premium that BMI advocates here would subvert *AEI* and the BMI Consent Decree by likely making it uneconomic for many BMI licensees to directly license performance rights.

The United States supported blanket carve-out licenses in *AEI* because they check, to some degree, the market power of the BMI rights holder collective.  While this Court's ratemaking authority places a constraint on the exercise of BMI's market power, it is not the equivalent of a true competitive constraint.  The ASCAP rate court recognized as much when it observed that "[t]o postulate what prices would prevail were [the market for blanket licenses] 'competitive' is perplexing in theory, impractical in practice, and dubious in outcome . . . ." *United States. v. ASCAP*, 831 F. Supp. 137, 144 (S.D.N.Y. 1993).

As the United States explained in *AEI*, direct licensing between rights holders and users establishes the most effective market-based constraint on BMI's pricing because it places an upper limit on the price that BMI can charge for the blanket license.  If the BMI collective charged more for a blanket license than users would pay if they licensed directly, users would forego a blanket license from BMI.  By ordering BMI to offer blanket carve-out licenses, *AEI* extended this competitive constraint to the more realistic instance in which a user, such as DMX, directly licensed only a portion of the rights administered by BMI.  The United States' concern is that BMI could reduce or eliminate this competitive constraint on its market power by burdening the direct licensing approach through addition of a substantial "option value premium."

The carve-out opportunity also enables a music user to pit rights holders against one another in direct licensing competition.  This competition would make the music licensing market more similar to other competitive markets in our economy where a user negotiates directly with sellers and will choose to buy more from those sellers that offer the best terms.  As a group, the BMI rights holders would prefer to avoid bidding against each other to offer the best direct licensing terms.  Yet, this type of competition would put pressure on each rights holder to lower its prices for its directly licensed music, in turn putting downward pressure on and producing lower-priced competitive benchmarks for BMI's blanket licenses.  To avoid such an outcome, the collective has the incentive to restrict that competition by pricing the carve-out license as high above the traditional flat-fee license as possible.  The greater the "option value premium," the fewer licensees will find the carve-out license mandated by *AEI* to be economically viable.

Therefore, to ensure that the blanket carve-out license exists as a meaningful competitive constraint on BMI's market power, to reduce users' licensing costs, and to further the purposes of the BMI Consent Decree, the Court should not permit BMI to charge a significant "option value premium" for a carveout license that the Second Circuit mandated it provide.[1]

---

[1]  We believe BMI is entitled to recover its full incremental costs of providing a blanket carve-out license.  The United States takes no position here as to how those costs should be assessed.

                                                Respectfully submitted,

                                                FOR THE UNITED STATES OF AMERICA

                                                <u>/s/ Christopher S. Reed</u>
                                                Daniel McCuaig
                                                Christopher S. Reed
                                                Trial Attorneys
                                                United States Department of Justice
                                                Antitrust Division, Litigation III Section
                                                450 5th Street, N.W., Suite 4000
                                                Washington, D.C. 20530
                                                Telephone: 202-514-0550

Dated:  April 13, 2010

## CERTIFICATE OF SERVICE

I hearby certify that on the 13th day of April, 2010, I caused a true and correct copy of the foregoing Memorandum of the United States of America on Decree Construction Issues to be served electronically via the CM/ECF system on the lead attorneys to be noticed in this matter, including those counsel of record identified below.

James Charles Fitzpatrick
Hughes Hubbard & Reed, LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-5000

Marvin Lawrence Berenson
Broadcast Music, Inc.
320 West 57th Street
New York, NY 10019
(212) 830-2533

Robert Bruce Rich
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Joseph John Dimona
Broadcast Music, Inc.
320 West 57th Street
New York, NY 10019
(212) 830-3847

Stuart Rosen
Broadcast Music, Inc.
320 West 57th Street
New York, NY 10019
(212) 830-2562

 /s/ Christopher S. Reed
Christopher S. Reed